ROBERT A. JIGARJIAN, *of counsel*
California Bar No. #171107
128 Tunstead Avenue
San Anselmo, California 94960
Tel: (415) 341-6660
Fax: (501) 907-2556
Email: raj@lucasvalley.net

JOHN G. EMERSON
SCOTT E. POYNTER
CHRISTOPHER D. JENNINGS
EMERSON POYNTER LLP
500 President Clinton Ave, Ste. 305
Little Rock, AR 72207
Tel: (501) 907-2555
Fax: (501) 907-2556
Email: jemerson@emersonpoynter.com
Email: scott@emersonpoynter.com
Email: cjennings@emersonpoynter.com

*Attorneys for Plaintiff Diane Lowery*

FILED
07 MAY 21 AM 10: 11
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

E-Filing

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DIANE LOWERY, *individually and on behalf of a class of similarly situated persons* | C 07 2665 EDL |
| Plaintiff, | Case No. |
| vs. | **CLASS ACTION COMPLAINT** |
| MENU FOODS INCOME FUND; MENU FOODS LIMITED PARTNERSHIP; MENU FOODS MIDWEST CORP.; MENU FOODS SOUTH DAKOTA; MENU FOODS, INC.; MENU FOODS HOLDINGS, INC. | |
| Defendants. | **DEMAND FOR JURY TRIAL** |

Plaintiff Diane Lowery ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint (the "Complaint") against Menu Foods Income Fund, Menu Foods Limited Partnership, Menu Foods Midwest Corp., Menu Foods South Dakota, Menu Foods, Inc., and Menu Foods Holdings, Inc. (collectively "Menu Foods" and/or "Defendants"). Plaintiff, upon both personal knowledge and information and belief and upon the investigation made by her attorneys, hereby alleges as follows:

## INTRODUCTION

1. This is a nationwide class action lawsuit brought on behalf of Plaintiff and other similarly situated individuals who purchased contaminated pet food products (the "Products") produced, manufactured, distributed, and/or sold by Defendants and who were accordingly damaged thereby. The Products were marketed and sold under various brand names.

2. Menu Foods is one of the nation's leading manufacturers of pet food sold by retailers, pet specialty stores, and other wholesale and retail outlets including Wal-Mart, Safeway, Kroger, Petco, and PetSmart Inc.

3. Menu Foods developed, manufactured, marketed, advertised, and warranted their Products as safe and fit for the ordinary purpose for which they were used, *i.e.* household pet consumption, free of defects. Menu Foods intended to, and did, place the Products in the stream of commerce to be sold to Plaintiff and other pet owners in California and throughout the United States.

4. These Products have proven to be unreasonably and dangerously contaminated and are therefore defective. Indeed, Menu Foods has admitted that the Products are not only defective but potentially poisonous. As a result of having purchased these defective and potentially poisonous Products negligently manufactured and/or sold by the Defendants, Plaintiff

and the members of the Class have unnecessarily suffered damages including expensive veterinary bills, loss of pets (including the costs associated with putting the animal to sleep and/or burial services), and the purchase price of the Products which they would have never bought had they known they were defective.

## PARTIES

5. Plaintiff Diane Lowery is a resident of Richmond, California. Plaintiff's cat suffered extreme illness and death due to the cat's ingestion of contaminated food produced, distributed, marketed, and sold by the Defendants. Plaintiff brings this action, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on her own behalf and as a representative of a class of persons consisting of all persons in the United States who purchased and/or incurred damages (medical and other expenses) by using the Products produced, manufactured, distributed, and/or sold by the Defendants and later recalled.

6. Defendant Menu Foods Income Fund is an unincorporated open-ended trust established under the laws of the Province Ontario, Canada. Its principal place of business is also Ontario. The Income Fund controls, directly or indirectly, the other Menu Foods Defendants engaged in the manufacture and distribution of pet food products.

7. Defendant Menu Foods Midwest Corp. is a Delaware corporation. It is the corporation most closely affiliated with the Income Fund for their operations conducted in the United States.

8. Defendant Menu Foods South Dakota, Inc. is a Delaware Corporation and a wholly owned subsidiary of Defendant Menu Foods Income Fund.

9. Defendant Menu Foods Holdings, Inc. is a Delaware Corporation and a wholly owned subsidiary of Defendant Menu Foods Income Fund.

10. Defendant Menu Foods Limited Partnership is an entity registered in Delaware and a wholly owned subsidiary of Defendant Menu Foods Income Fund.

11. Defendant Menu Foods, Inc. is a New Jersey Corporation and a wholly owned subsidiary of Defendant Menu Foods Income Fund.

12. Menu Foods manufactures and sells pet food products to retail customers and brand owners throughout North America. Menu Foods owns Kansas and New Jersey manufacturing plants that produced the Products now subject to recall.

## JURISDICTION AND VENUE

13. This Court has original jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(d). The Class involves more than 100 individuals. A member of the Class is a citizen of a state different from the Defendants, and the amount of controversy, in the aggregate, exceeds the sum of $5,000,000.00 exclusive of interest and costs.

14. Venue is proper in this district under 28 U.S.C. §1391. Defendants market and sale products here, and have availed themselves to the laws and protection of the State of California.

## FACTS

15. Defendants claim to be "the leading North American private-label/contract manufacturer of we pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other ritual and wholesale outlets." They hold themselves out to the public as a manufacturer of safe, nutritious, and high-quality dog and cat food.

16. On February 20, 2007, Menu Foods received its first six complaints concerning kidney failure occurrences in pets which had eaten contaminated and recalled Products.

17. On February 27, 2007, as a part of its quarterly feeding trials, Menu Foods fed samples of their contaminated and recalled Products to 40-50 cats and dogs. By March 2, the first of 9 animals in Menu Foods feeding trial died of acute renal failure.

18. By March 6th, 2007, Menu Foods had determined that many of their pet food Products were indeed contaminated and they also had determined the likely source of the contamination. Menu Foods determined that the contamination problem stemmed from a tainted wheat gluten supply that they had received from a new foreign supplier. The wheat gluten supply contained aminopterin and/or melamine, two substances which are foreign to pet food, which would not be expected by a reasonable person to be present in pet food, and which may be toxic when ingested.

19. On March 6th, 2007, Menu Foods took its first action concerning the possible contamination by switching its supplier of wheat gluten.

20. However, not until 10 days later, on March 16, 2007, did Menu Foods inform the public of their contamination problem. On that day, Menu Foods announced a recall of several of its wet pet food Products, which included approximately 42 brands of "cuts and gravy" style dog food and 51 brands of "cuts and gravy" style cat food, all produced at Menu Food's facilities in Emporia, Kansas and Pennsauken, New Jersey between December 3, 2006 and March 6, 2007.

21. Up until the March 16, 2007, Recall, Menu Foods did nothing to prevent the distribution of the contaminated pet food Products despite their knowledge of the very real problems associated with the wheat gluten contamination for approximately three weeks. Indeed, Defendants knew of the potential for contamination no later than February 20, 2007 and were conducting an internal investigation by February 27. By March 6, Defendants had discovered the likely source of the problem and corrected that issue 10 days prior to announcing

the recall. After March 6 and prior to the recall, Defendants continued to maintain their silence, as they – according to their own announcement – conducted "a substantial battery of technical tests, conducted by both internal and external specialists."

22. Defendants knew about the potential problems with their Products and should have notified the public long before when they actually did. Indeed, Menu Foods still did not announce a recall or inform the public about the contaminated pet food Products until its largest institutional customer, which accounted for approximately 11% of Menu Food's revenue, indicated that it would initiate ***its own recall*** of Menu Food's products, and place all of its future orders on "hold." Faced with having one of its own customers announce a recall; Menu Foods finally made its announcement on March 16, 2007. This action, or lack thereof, permitted and caused additional harm to thousands of pet owners in California and throughout the United States.

23. The reason for Menu Food's silence is clear. After the recall was announced on March 16, 2007, Menu Food's stock MEW.UN dropped 45% by the close of trading day.

24. Since Menu Food's recall, the problem has only gotten worse. Three other pet food manufacturers have issued their own recalls and the U.S. Food and Drug Administration, as of April 3, 2007, has stated that they can not definitely rule out more recalls in the near future.

25. Defendants, directly, or through their agents, ostensible agents and/or co-conspirators, by selling the Products as pet food, implicitly and explicitly represented that the Products were fit for consumption by pets, and would not result in the death and/or serious illness of the pets that consume the purportedly safe food. Indeed, as evidenced by numerous press releases, Defendants continued to directly and explicitly represent through overt and

unambiguous statements that the Products were fit for consumption by pets, and will not result in the death and serious illness of the pets that consume the purported food.

26. Aside from the aforementioned press releases, Defendants have also made representations, including on product labeling and otherwise in print materials and in other marketing and promotional materials, concerning the quality of their products, including explicit and implicit representations that the Products were suitable for consumption by pets. Defendants ultimately make billions of dollars in revenue a year from companies who sell the Products at retail level. Accordingly, Defendants keep themselves apprised of the advertising, promotions, marketing and claims that are made on behalf of the Products. On information and belief, Defendants coordinate with the companies who brand the product at the retail level, concerning the claims made about the quality of Defendants' product, including the Products.

27. Plaintiff owned a cat that was a very healthy middle aged cat named "Cupcake." Plaintiff's cat ingested defective recalled pet food Products which were produced by Menu Foods. At the time Plaintiff fed her cat the defective Products, she did not know nor had reason to know that they were potentially defective and deadly.

28. Beginning around late February and early March, 2007, Plaintiff noticed that Cupcake was acting differently and had begun to lose weight. Cupcake died on or about March 2, 2007. Lab tests revealed that Cupcake had an elevated blood urea nitrogen (Bun) level of 124 compared to the recommended levels of 15-34. Creatinine levels were 3.6 compared to the recommended levels of .8-2.3. These tests are used to evaluate kidney functions. Increased levels indicate impaired kidney function, an affliction now known to be caused by the tainted pet food supplied by Defendants and ingested by Plaintiff's cat.

Case 1:07-cv-08615-JMD Document 2-3 Filed 10/26/2007 Page 8 of 15

## CLASS ACTION ALLEGATIONS

29. Plaintiff brings her class action claim pursuant to Rule 23 of the Federal Rules of Civil Procedure. The requirements of Rule 23 are met with respect to the class defined below.

30. Plaintiff brings her claims on her own behalf, and on behalf of the following Class:

> All persons in the United States who purchased and/or, incurred damages by using (including medical and other expenses), pet food products produced, manufactured, distributed, and/or sold by the Defendants and later recalled.

31. Plaintiff reserves the right to amend or modify her Complaint and/or the Class definition in connection with meaningful discovery and/or a Motion for Class Certification.

32. This class action is properly brought as a class action for the following reasons. The Class is so numerous that joinder of the individual members of the proposed Class is impracticable. The Class, upon information and belief, includes thousands if not hundreds of thousands of individuals geographically dispersed throughout the United States. The precise number and identities of Class members are unknown to Plaintiff but can be easily obtained through notice and discovery. Plaintiff does not anticipate any difficulties in the management of this action as a class action. The Class is ascertainable and there is a well-defined community of interests in the questions of law and/or fact alleged since the rights of each Class member were infringed or violated in a similar fashion based upon the Defendants' misconduct. Notice can be provided through publication, the cost of which is properly imposed upon the Defendants.

33. Questions of law or fact common to the Class exist as to Plaintiff and all Class members, and these common questions predominate over any questions affecting only individual members of the Class. Among the common questions of law and/or fact are the following.

a. Whether Defendants were negligent in allowing pet food Products in the United States to be contaminated with a dangerous ingredient(s) that was not safe for consumption;

b. Whether Defendants owed a duty to pet owners by ensuring that the pet food Products were not contaminated with dangerous ingredients;

c. Whether Defendants' conduct amounted to a breach of that duty;

d. Whether Defendants' conduct was a proximate cause of Plaintiff's and the Class members' damages;

e. Whether Defendants are responsible for the contamination of the pet food Products;

f. Whether Defendants' representations, omissions, and conduct regarding their pet food Products were misleading or false;

g. Whether Defendants' representations and conduct were likely to deceive consumers into believing that the pet food Products were safe for the purposes for which they were sold;

h. When Defendants knew or should have known the pet food Products were defective;

i. When Defendants knew or should have known the pet food products had the potential to be defective;

j. Whether Defendants refused to disclose the their knowledge of potential problems associated with the pet food products after they knew of the Products' propensity to harm pets;

k. Whether the propensity of the pet food Products to harm pets constitutes a manufacturing defect or design;

l. Whether Defendants' conduct constitutes a breach of warranty;

m. Whether Defendants were negligent per se;

n. Whether Defendants are strictly liable;

o. Whether members of the Class have been injured by the Defendants conduct;

p. Whether members of the Class have sustained damages and are entitled to restitution as a result of Defendants wrongdoing and, if so, what is the

proper measure and appropriate formula to be applied in determining such damages and restitution; and

q. Whether members of the Class are entitled to injunctive relief.

34. Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff and the Class members. Individual questions, if any, pale by comparison to the numerous common questions that predominate.

35. The injuries sustained by Plaintiff and the Class members flow, in each instance, from a common nucleus of operative facts – the Defendants' wrongdoing. In every related case, Plaintiff and the Class members suffered damages caused by their purchase of defective pet food products produced, manufactured, distributed, and/or sold by the Defendants which were later recalled.

36. Plaintiff's claims are typical of the claims of the Class members. As particularly described herein, Plaintiff suffered economic loss caused by the Defendants in a manner similar to all of the other Class members. Therefore, Plaintiff's claims are typical of the Class. Moreover, the defenses, if any, that will be asserted against Plaintiff's claims are typical of the defenses that will be asserted, if any, against the Class members' claims.

37. Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff has no interests adverse to the interests of the Class members and has retained counsel with significant experience in the prosecution of class actions and complex litigation, including consumer protection litigation, and who will vigorously prosecute this action.

38. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and individual joinder of all members of the Class is impracticable, if not impossible because the Class members are scattered throughout the United

States. Moreover, the cost to the court system of such individualized litigation would be substantial given the comparatively small amounts of individual damages we are dealing with here. Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and multiple courts hearing virtually identical lawsuits. By contrast, the conduct of this action as a class action presents fewer management difficulties, conserves the resources of the parties and the court, protects the rights of each Class member and maximizes recovery for them.

39. Plaintiff knows of no difficulties that will be encountered in the management of this litigation that would preclude its maintenance as a class action.

40. Defendants have acted or have refused to act on grounds generally applicable to the Class thereby making it appropriate to grant final declaratory and injunctive relief with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I: *STRICT PRODUCTS LIABILITY – DEFECT IN DESIGN OR MANUFACTURE*

41. Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth herein.

42. Defendants, as commercial suppliers of pet food Products, have an absolute duty to refrain from placing into the stream of commerce an unreasonably dangerous product that is not fit for consumption or use and which can cause injury to person or property.

43. Defendants breached that duty by placing into the stream of commerce an unreasonably dangerous product that is not fit for consumption or use and which has caused

injury to both persons and property. These products were unreasonably dangerous because they contained manufacturing and/or design defects.

44. The unreasonably dangerous products Defendants placed into the stream of commerce reached consumers such as Plaintiff and the Class members without substantial change in the condition in which they were was supplied.

45. Plaintiff and the Class members were reasonably foreseeable users of the unreasonably dangerous products and used these unreasonably dangerous products in a foreseeable manner. As a result, they have suffered significant damages caused directly and proximately by their use of Defendants' unreasonably dangerous products including losses associated with the death of his pet as well as expenditures of money.

**COUNT II:** ***STRICT PRODUCTS LIABILITY – FAILURE TO WARN***

46. Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth herein.

47. Defendants placed into the stream of commerce an unreasonably dangerous product that is not fit for consumption or use and which can cause injury to person or property.

48. Simultaneously, Defendants also failed to warn the reasonably foreseeable users of their products, including Plaintiff and the Class members, of the known dangers associated with their unreasonably dangerous products despite their well-documented knowledge. Even after Defendants became aware of the dangerous contamination of pet food, they still refused to warn the consumers and allowed countless other consumers to purchase the contaminated pet food products.

49. As a direct and proximate result of Defendants' actions, Plaintiff and the Class members have suffered significant damages.

**COUNT III:** ***NEGLIGENCE***

50. Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth herein.

51. Defendants owed a duty of care to Plaintiff, the Class members, and general public to ensure that its pet food products did not contain toxic or otherwise unreasonably dangerous ingredients.

52. Defendants breached that duty by producing, manufacturing, distributing, and/or selling pet food products to Plaintiff and Class members which did indeed contain toxic or otherwise unreasonably dangerous ingredients.

53. Additionally, Defendants breached their duty of care to Plaintiff and the Class members by failing to use sufficient quality control, perform adequate testing, and failing to take sufficient measures to prevent the products from continuing to be offered for sale, sale, or fed to pets, despite their knowledge of their products dangerous condition.

54. Defendants' breaches of duty directly and proximately caused significant damage to Plaintiff and the Class.

**COUNT IV:** ***NEGLIGENCE PER SE***

55. Plaintiff incorporates by reference all of the foregoing paragraphs as if set forth herein.

56. Defendants also had a duty to ensure that their pet food products was produced, transported, marketed, distributed, and sold in a manner consistent with government regulations.

57. Defendants breached this duty in violation of regulatory standards.

58. Such breaches directly and proximately caused significant damages to Plaintiff and the Class.

**JURY TRIAL DEMANDED**

59. Plaintiff and the Class demand a jury of twelve.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, requests that she and the other applicable Class members have judgment entered in their favor and against Defendants, as follows:

A. An order certifying that this action, involving Plaintiff's and the Class members' claims be maintained as a nationwide class action under Rule 23 of the Federal Rules of Civil Procedure and appointing Plaintiff and his undersigned counsel to represent the Class;

B. An award of actual damages including medical and other out-of pocket expenses;

C. Appropriate injunctive relief;

D. Reasonable attorneys' fees and costs; and

E. Such further appropriate relief this Court deems necessary.

DATED: May 18, 2007

**EMERSON POYNTER LLP**

By: [signature]

Robert A. Jigarjian, *Of Counsel*
CA Bar No. #171107
128 Tunstead Avenue
San Anselmo, California 94960

John G. Emerson
TX Bar No. 06602600
Scott E. Poynter
AR Bar No. 90077
Christopher D. Jennings
AR Bar. No. 2006306
The Museum Center
500 President Clinton Ave., Ste. 305
Little Rock, AR 72201
Phone: (501) 907-2555
Fax: (501) 907-2556

***Counsel for Plaintiff***